UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 11-cv-22887-SCOLA

LIEBHERR-MINING
EQUIPMENT COLMAR SAS,

    Plaintiff,

v.

CASTEC, INC.,

    Defendant.
_____/

## ORDER ON MOTION FOR SUMMARY JUDGMENT

THIS MATTER is before the Court on the Motion for Summary Judgment [ECF No. 32] and Memorandum in Support of Motion for Summary Judgment [ECF No. 33], filed by Plaintiff Liebherr-Mining Equipment Colmar SAS ("Liebherr-Mining").  For the reasons set forth below, the Court finds that Liebherr-Mining is entitled to summary judgment on all of its claims and on the tortious interference counterclaim.

### Factual Background[1]

In this diversity action, Liebherr-Mining claims Defendant Castec, Inc. ("Castec") failed to pay for certain goods sold and delivered.  Castec has counterclaimed against Liebherr-Mining for tortiously interfering with a business relationship.  Liebherr-Mining seeks summary judgment on its claims for breach of contract, open account, and goods sold, and also on Castec's counterclaim for tortious interference.

---

[1] Except where noted, the Court finds the facts in this section to be undisputed. In addition to facts on which the parties agree, this section includes facts that Castec leaves effectively uncontroverted.  This District's Local Rule 56.1(b) requires the movant's facts to be controverted by reference to record evidence.  Wherever Castec has asserted, without any supporting citation to the record, that certain of Liebherr-Mining's facts are merely "disputed," such facts are deemed admitted consistent with the Local Rule.  This result follows from the Supreme Court's directive that the nonmoving party cannot rest on "mere allegations or denials," but instead must "go beyond the pleadings and present competent evidence designating specific facts showing that there is a genuine issue for trial." *See United States v. $183,791.00*, 391 F. App'x 791, 794 (11th Cir. 2010) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In merely writing "disputed" in response to some facts, Castec fails to create a genuine issue for trial as to those facts.

Liebherr-Mining is a French company that primarily manufactures and sells machines for mining extraction and construction. Castec is a Florida corporation that provides spare parts and attachments, as well as servicing, to mining, construction, and dredging companies. In early 2010, Liebherr-Mining began selling parts and attachments to Castec, who in turn would sell them to third-party buyers. Liebherr-Mining states that goods were delivered, without objection, to Castec (or, at Castec's request, to a third-party customer) between March 1, 2011 and June 23, 2011 for which payment has not been made. Liebherr-Mining claims that Castec's outstanding debt for goods sold and delivered exceeds 273,000 euros (€273,000). Castec does not dispute that it accepted delivery of the goods and failed to pay for them, but insists that its debt has been satisfied.

According to Liebherr-Mining, its transactions with Castec were governed by the Liebherr-Mining Equipment Colar SAS - General Terms and Conditions - International Sales Agreement (the "Written Agreement"). Castec contends that it never entered into, accepted, or signed the Written Agreement with Liebherr-Mining. The Written Agreement in fact does not mention Castec by name and does not contain a signature of any sort. Liebherr-Mining, in reply, maintains that the parties' contractual relationship is actually evidenced by course of conduct and a series of emails and not the Written Agreement.

Castellanos Equipos Tecnicos LTDA ("Castellanos") is related to, and has common ownership with, Castec but is a legally separate entity. Unlike Castec, Castellanos did have a written agreement with Liebherr-Mining. Castellanos's agreement with Liebherr-Mining was annulled on May 18, 2011, however, and the parties agreed to settle outstanding debts with one another resulting in Liebherr-Mining agreeing to pay Castellanos €1.4 million. Liebherr-Mining made only partial payment to Castellanos, withholding €283,460 until Castec paid off its outstanding debt. Liebherr-Mining sent an email to Castellanos on June 24, 2011 in which it indicated the money was being withheld from Castellanos conditionally and would be handed over as soon as Castec paid its outstanding invoices. Liebherr-Mining says that Castellanos never responded to this email, nor did it hear anything from Castec. Castec does not dispute this point. According to Castec, Liebherr-Mining's decision to withhold funds from Castellanos means that Castec's debt has been satisfied and that it owes nothing. But, Liebherr-Mining disputes this characterization since there has never been an acknowledgement from Castellanos that the withheld funds could be used to satisfy Castec's debt to Liebherr-Mining.

Castec's tortious interference claim stems from its business relationship with third-party Carbones del Cerrejon, LLC ("Cerrejon"). Castec sold Liebherr-Mining parts and attachments to Cerrejon under a so-called Blanket Purchase Order (the "BPO"), which was to be in effect for a period of seven years. The BPO did not require Cerrejon to purchase a fixed number of parts from Castec or obligate it to a particular volume of business with Castec. Although sold through Castec, the parts and attachments were shipped directly to Cerrejon from Liebherr-Mining upon manufacture. Liebherr-Mining notified Cerrejon that it was no longer selling parts and attachments to Castec or its affiliates and that if Cerrejon wished to continue receiving Liebherr-Mining parts after July 1, 2011, it would have to purchase them directly from Liebherr-Mining. Thereafter, Liebherr-Mining sold its products directly to Cerrejon. But for these actions by Liebherr-Mining, Castec contends that Cerrejon would have remained its client.

### **Legal Standard**

Motions for summary judgment are governed by Federal Rule of Civil Procedure 56. Summary judgment is proper if the pleadings, depositions, answers to interrogatories, affidavits and admissions on file show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also* Fed. R. Civ. P. 56. "An issue of fact is 'material' if, under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259-60 (11th Cir. 2004). "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Id.* at 1260. All the evidence and factual inferences reasonably drawn from the evidence must be viewed in the light most favorable to the nonmoving party. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *see also Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1280 (11th Cir. 2004).

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. *See Celotex*, 477 U.S. at 323-24. The nonmovant's evidence must be significantly probative to support the claims. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The Court will not weigh the evidence or make findings of fact. *See Morrison v.*

*Amway Corp.*, 323 F.3d 920, 924 (11th Cir. 2003); *see also Anderson*, 477 U.S. at 249. Rather, the Court's role is limited to deciding whether there is sufficient evidence upon which a reasonable juror could find for the nonmoving party. *See Morrison*, 323 F.3d at 924.

## Legal Analysis

The Court finds that Liebherr-Mining is entitled to summary judgment on its contract claim and on its alternative claims for open account and goods sold. The Court also finds that Liebherr-Mining is entitled to summary judgment on Castec's tortious interference counterclaim.

### I.     Breach of Contract

In order to establish a breach of contract claim under Florida law, Liebherr-Mining must show the existence of an agreement between the parties, a material breach of that agreement by Castec, and damages resulting therefrom. *See Osorio v. State Farm Bank, F.S.B.*, 862 F. Supp. 2d 1336, 1340 (S.D. Fla. 2012) (Middlebrooks, J.). "Issues of contract interpretation are generally questions of law and, thus, properly resolved on summary judgment," although "the existence of a contract is a question of fact to be determined by consideration of all the facts and circumstances." *See Lockheed Martin Corp. v. Galaxis USA, Ltd.*, 222 F. Supp. 2d 1315, 1323 (M.D. Fla. 2002) (Antoon, J.).

Castec argues that summary judgment must be denied because Liebherr-Mining fails to establish the existence of a contract between the parties. This Court agrees that there is no evidence Castec was party to the Written Agreement. Indeed, Castec's signature appears nowhere on the Written Agreement, nor is Castec even mentioned in the Written Agreement. Nevertheless, Castec concedes that it did business with Liebherr-Mining by placing orders for which it was billed by invoice. It does not dispute that it ordered and received goods from Liebherr-Mining; it only disputes that any debt is outstanding. For purposes of this case, then, the Court need only find that the parties had a contract with respect to the outstanding invoices in question, and the Court has no trouble reaching that conclusion. There is no dispute that Castec ordered goods and that Liebherr-Mining shipped them to Castec or to a third-party customer at Castec's direction. Putting aside the question of whether the debt is outstanding or not, this arrangement unquestionably was contractual.

Turning to the question of breach, Castec does not dispute that it failed to pay Liebherr-Mining the €273,000 at issue in this lawsuit. Rather, Castec argues that its debt was extinguished when Liebherr-Mining withheld €283,460 from what it owed Castellanos.

According to Castec, Liebherr-Mining has already been paid for the debt sued upon; therefore Liebherr-Mining cannot collect upon that same debt here. This Court disagrees.

Castec relies on the June 24, 2011 email between Liebherr-Mining and Castellanos to establish that the debt has been paid. In that email, Liebherr-Mining tells Castellanos that it is paying all it owes to Castellanos "minus the open amount that [Castec] currently owes to us," and that "[a]s soon as you have settled the open amounts of your [Castec] account with us, we will also transfer the remaining sum of [€ 283,460] into [the Castellanos] account." *See* 6/24/2011 Email [ECF No. 33-1]. The letter concludes with: "We trust this is an acceptable procedure also for you." *See id.* It is undisputed that neither Castellanos nor Castec ever responded to this email, or otherwise had anything to say about Liebherr-Mining's decision to withhold the funds.

Whatever the propriety of Liebherr-Mining's decision, these facts do not negate Castec's breach or the debt it owes to Liebherr-Mining. Castec failed to pay Liebherr-Mining for the goods sold and delivered, and that debt was not wiped clean by Liebherr-Mining's unilateral decision to withhold funds from Castellanos. It may be that Liebherr-Mining had no right to withhold the funds, but that dispute is not at issue. The focus here is on whether Castec still owes a debt notwithstanding Liebherr-Mining's retention of funds from Castellanos, and the Court finds that it does. The email's language is plain and unambiguous – it states that Liebherr-Mining will withhold funds from Castellanos *until* Castec pays its outstanding debt. There is no evidence that Castec ever agreed that its debt with Liebherr-Mining would be satisfied with the funds withheld from Castellanos, a legally separate entity. Nor is there evidence that Castellanos had the authority to extinguish Castec's debt for it, or that Castellanos ever agreed to do so. Indeed, Castec does not argue that there was an assignment of the debt or anything of the sort.[2] Absent such evidence, the Court must reach the inescapable conclusion that Castec's debt

---

[2] If Castec is making an accord-and-satisfaction argument, it fails for the reasons above. An accord-and-satisfaction results only when "the parties mutually intend to effect a settlement of an existing dispute by entering into a superseding agreement" and "there is actual performance in accordance with the new agreement." *See Martinez v. S. Bayshore Tower*, L.L.L.P., 979 So. 2d 1023, 1024 (Fla. 3d DCA 2008); *see also Oriole Gardens Condo. Ass'n I v. Aspen Specialty Ins. Co.*, 2012 WL 2854331, at *3 (S.D. Fla. July 12, 2012) (Cohn, J.). Here, there is no evidence of any agreement between Liebherr-Mining and Castec to settle the debt, nor is there evidence that Castec and Castellanos agreed that Liebherr-Mining's withholding of funds would be in satisfaction of Castec's debt. Thus, there is no evidence "the parties mutually intend[ed] to effect a settlement of an existing dispute by entering into a superseding agreement," as required for accord-and-satisfaction. *See Martinez*, 979 So. 2d at 1024.

remains outstanding. Consequently, the Court finds Liebherr-Mining is entitled to summary judgment on its contract claim.

## II. Open Account & Goods Sold

Under Florida law, in the absence of an express written contract between the parties, a plaintiff may sue to collect on an open account for goods sold and delivered.[3] *See, e.g.*, *Alderman Interior Sys., Inc. v. First Nat'l-Heller Factors, Inc.*, 376 So. 2d 22, 24 (Fla. 2d DCA 1979); *Cent. Ins. Unders., Inc. v. Nat'l Ins. Fin. Co.*, 599 So. 2d 1371, 1373 (Fla. 3d DCA 1992). An "open account" generally refers to "an unsettled debt, arising from items of work or labor, goods sold and other open transactions not reduced to writing, the sole record of which is usually the account books of the owner of the demand." *See H&H Design Builders, Inc. v. Travelers' Indem. Co.*, 639 So. 2d 697, 700 (Fla. 5th DCA 1994). The plaintiff must show that there was a sales contract between the parties, that the claimed amount represents either the agreed upon sales price or the reasonable value of the goods delivered, and that the goods sold were in fact delivered to the buyer. *Evans v. Delro Indus., Inc.*, 509 So. 2d 1262, 1263 (Fla. 1st DCA 1987).

Here, assuming the absence of an express written contract between the parties, Castec would be liable under an open account theory for goods sold. Indeed, "[Castec] does not dispute the fact that goods were sold and delivered, and has not objected to the authenticity of [Liebherr-Mining's] invoices." *See McArthur Dairy, LLC v. McCowtree Bros. Dairy, Inc.*, 2011 WL 2731283, at *4 (S.D. Fla. July 13, 2011) (Cooke, J.). Further, the Court finds that "the invoices [and statement of account sent to Castec and attached to the Complaint] present a reasonable value of the goods actually delivered." *See id.* (citation omitted). The only argument Castec makes – that the debt was settled when Liebherr-Mining withheld funds from Castellanos – has already been rejected. Thus, Liebherr-Mining is entitled to summary judgment on its alternative claims for an open account and for goods sold and delivered.[4]

---

[3] Although Liebherr-Mining has pled separate claims for open account (Count II) and goods sold (Count III), Florida case law speaks of a claim for "goods sold and delivered on an open account." *See, Alderman Interior Sys., Inc. v. First Nat'l-Heller Factors, Inc.*, 376 So. 2d 22, 24 (Fla. 2d DCA 1979). As such, the claims are appropriately analyzed together as one.

[4] Of course, this ruling does not mean that Liebherr-Mining may collect its damages twice. It is entitled to an award of €273,097.94 from Castec to satisfy the debt owed, whether under a breach of contract theory or an open account for goods sold theory. This common sense result hews to the rule that a plaintiff is not entitled to a double recovery on alternative theories. *See, e.g.*, *M & M Aircraft Servs., Inc. v. EC Techs., Inc.*, 911 So. 2d 161, 161-62 (Fla. 3d DCA 2005) (double damages on alternative theories not permitted).

### III.   Affirmative Defenses

Castec's four affirmative defenses (failure to state a claim, payment, failure to mitigate damages, and unclean hands) are all grounded in the argument that Liebherr-Mining has already been paid for the debt sued upon, because it withheld funds from Castellanos.  As the Court has already rejected this argument, no genuine issue of material fact remains on these defenses.  Accordingly, Castec's affirmative defenses will not defeat summary judgment.

### IV.   Tortious Interference

Under Florida law, a claim for tortious interference with a business relationship requires proof of: (1) a business relationship under which the plaintiff has legal rights; (2) knowledge of the relationship by the defendant; (3) an intentional and unjustified interference with that relationship by the defendant; and (4) damage to the plaintiff as a result of the breach of the business relationship.  *See Bortell v. White Mountains Ins. Group, Ltd.*, 2 So. 3d 1041, 1048 (Fla. 4th DCA 2009).

Castec's counterclaim for tortious interference alleges that Liebherr-Mining solicited Cerrejon to cease all business with Castec and induced it to purchase products directly from Liebherr-Mining instead.  Liebherr-Mining allegedly did this because Castec was behind on payments and had incurred the outstanding debt discussed above. Castec alleges that its relationship with Cerrejon would have continued absent Liebherr-Mining's interference, and that Castec has been damaged financially because of such interference.  Liebherr-Mining argues that Castec cannot succeed on its tortious interference claim because Liebherr-Mining is not a third-party, or stranger, to the business relationship between Castec and Cerrejon; there is no evidence Castec's relationship with Cerrejon would have continued absent the interference; and Liebherr-Mining's actions were privileged.  The Court rejects the first two of these arguments, but finds Liebherr-Mining is entitled to summary judgment on the basis of the third.

As to the first argument, Liebherr-Mining has not shown that it is a party to the business relationship such that the tortious interference claim must fail.  Liebherr-Mining contends that it "was the only reason that the relationship [between Castec and Cerrejon] existed," because it manufactured the parts sold to Cerrejon and, in fact, shipped them directly to Cerrejon.  *See* Mem. at 10.  According to Liebherr-Mining, it "was an indispensable party to the relationship between Castec and Cerrejon" because "[a]bsent Liebherr-Mining's sale of its parts to Castec, Castec would have had nothing to sell to Cerrejon."  *See id.* at 10-11.

Thus, Liebherr-Mining essentially argues that, as the manufacturer, it cannot be liable to its distributor for tortious interference. Liebherr-Mining cites several cases in aid of its argument, but none involves a distributor suing a manufacturer for interference with a third-party buyer relationship. *See Romika-USA, Inc. v. HSBC Bank USA, N.A.*, 514 F. Supp. 2d 1334, 1339 (S.D. Fla. 2007); *Palm Beach County Health Care District v. Professional Medical Education, Inc.*, 13 So. 3d 1090, 1094 (Fla. 4th DCA 2009); *Ernie Haire Ford, Inc. v. Ford Motor Co.*, 260 F.3d 1285, 1294 (11th Cir. 2001); *Genet Co. v. Annheuser-Busch, Inc.*, 498 So. 2d 683, 684 (Fla. 3d DCA 1986); *W.D. Sales & Brokerage LLC v. Barnhill's Buffet of Tennessee, Inc.*, 362 F. App'x 142, 143 (11th Cir. 2010). There are, in fact, instances in the case law where a distributor was permitted to maintain a tortious interference claim against a manufacturer. *See, e.g.*, *Viscito v. Fred S. Carbon Co.*, 717 So. 2d 586, 587 (Fla. 4th DCA 1998); *Nordyne, Inc. v. Fla. Mobile Home Supply, Inc.*, 625 So.2d 1283, 1284 (Fla. 1st DCA 1993); *GNB, Inc. v. United Danco Batteries, Inc.*, 627 So. 2d 492, 493 (Fla. 2d DCA 1993). Thus, Liebherr-Mining cannot avoid liability on the argument that it was an essential party to the business relationship.

As to the second argument, the Court rejects the suggestion that Castec had no reasonable expectation its relationship with Cerrejon would have continued but for the alleged tortious interference. "As a general rule, an action for tortious interference with a business relationship requires a business relationship evidenced by an actual and identifiable understanding or agreement which in all probability would have been completed if the defendant had not interfered." *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So. 2d 812, 815 (Fla. 1994). In 2010, Castec and Cerrejon entered into the BPO, which was to govern the parties' business relationship for a seven-year period. Even though the BPO did not obligate Cerrejon to a particular volume of business with Castec, and even though Liebherr-Mining was not required to continue to use Castec as a distributor, it is reasonable to expect that Castec's business relationship with Cerrejon likely would have continued for some period of time had Liebherr-Mining continued to supply Castec with parts and attachments for sale.

The cases cited by Liebherr-Mining on the issue of whether Castec's relationship with Cerrejon would have continued absent the interference are not on point. This case is unlike *Realauction.com, LLC v. Grant Street Group, Inc.*, 82 So. 3d 1056 (Fla. 4th DCA 2011), or *Kissinger-Campbell V. Harrell*, 2009 WL 103274 (M.D. Fla. Jan. 14, 2009), wherein there was no pre-existing business relationship with which to interfere. Nor is it like *Ethan Allen*, wherein

there was no reasonable basis to assume that the dealer's unidentified past customers would return to purchase furniture in the future.  As the Florida Supreme Court explained, "[t]he mere hope that some of [the dealer's] past customers may choose to buy again cannot be the basis for a tortious interference claim."  *See Ethan Allen*, 647 So. 2d at 815.  Castec's prior and (at the time) on-going relationship with a specific customer, Cerrejon, under an existing seven-year-long agreement, the BPO, separates this case from *Ethan Allen* and the other decisions cited by Liebherr-Mining.

As to the third argument, although it is a close question on summary judgment, the Court agrees that Castec's tortious interference claim is barred by the so-called "competition privilege."  "The tort of tortious interference teeters between two competing values – the desire to protect the reasonable expectations of the parties to a business relationship on the one hand, and the need to avoid excessive restrictions on freedom of competition on the other."  *Jay v. Mobley*, 783 So. 2d 297, 299 (Fla. 4th DCA 2001).  Thus, one defense to a tortious interference claim is the competition privilege, which rests on "the right of competitors to compete for customers."  S*ee Int'l Sales & Serv., Inc. v. Austral Insulated Prods., Inc.*, 262 F.3d 1152, 1158 (11th Cir. 2001).

The Court finds this case to be controlled by the Eleventh Circuit's decision in *International Sales & Service*, cited above.  In that case, an aviation wire distributor sued the manufacturer for tortiously interfering with its business relationship with an end-customer.  262 F.3d at 1153-54.  The distributor did not have a written distributorship agreement with the manufacturer and it kept secret from the manufacturer the identities of its customers.  *See id.*  Eventually, the manufacturer told the distributor that it would no longer sell to it unless the distributor disclosed the identity of its customers.  *See id.* at 1154.  The distributor initially refused, but agreed after the manufacturer promised not to use the information to sell directly to the distributor's customers.  *See id.*  Once it obtained the client information, however, the manufacturer contacted one of the distributor's customers and offered to sell its products directly.  *See id.*  Thereafter, the manufacturer ceased selling wire to the distributor altogether, leaving it unable to fill subsequent orders from the customer.  *See id.*  The distributor subsequently went bankrupt as a result.  *See id.*

Relying upon its prior decision in *Royal Typewriter Co. v. Xerographic Supplies Corp.*, 719 F.2d 1092, 1097-1105 (11th Cir. 1983), the Eleventh Circuit held that the manufacturer's

actions were protected by the competition privilege such that it was entitled to judgment as a matter of law on the distributor's tortious interference claim. *Int'l Sales & Serv.*, 262 F.3d at 1160.  The dissent maintained that "whether an action is privileged is a jury question under Florida law, and that in this case, the jury had sufficient evidence to find that [manufacturer's] actions were not justified." *See id.* at 1161 (Wilson, J., dissenting). The majority rejected this view based on the current state of Florida law, even while noting that "[w]hen there is room for different views, the determination of whether the interference was improper or not is ordinarily left to the jury, to obtain its common feel for the state of community mores and for the manner in which they would operate upon the facts in question." *See id.* at 1159 (citation omitted).

In this case, the undisputed facts show that Liebherr-Mining contacted Cerrejon and told it that Liebherr-Mining parts would no longer be available through Castec and that if Cerrejon wanted to continue purchasing such parts, it would have to do so directly through Liebherr-Mining. Although Castec suggests that Liebherr-Mining made "threats and demands" of Cerrejon, *see* C. Castellanos Decl. ¶ 31, and thus employed "improper means" such that the competition privilege cannot apply, *see Ice Portal, Inc. v. VFM Leonardo, Inc.*, 2010 WL 2351463, at *7 (S.D. Fla. June 11, 2010) (Altonaga, J.), Castec offers no factual support. Indeed, the only support Castec provides is a single conclusory statement from its declaration. *See* C. Castellanos Decl. ¶ 31 ("Ricardo Juliao, at Cerrejon, further advised [me] that the only reason why Cerrejon would not continue its relationship with Castec was because of Liebherr's threats and demands."). But that statement is a mere characterization unsupported by even the facts set forth within the same declaration; it is not evidence precluding summary judgment.[5] *See Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1217 (11th Cir. 2000) (conclusory assertions in affidavit, without specific supporting facts, have no probative value and will not create a genuine issue for trial); *Murphy v. City of Aventura*, 616 F. Supp. 2d 1267, 1276 (S.D. Fla. 2009) (Martinez, J.) ("this statement is conclusory and not specific enough to create a genuine issue of material fact").

---

[5] The statement is also double-hearsay and, as such, generally inadmissible on summary judgment. *See Macuba v. Deboer*, 193 F.3d 1316, 1322-23 (11th Cir. 1999). Nonetheless, the statement, if not merely conclusory, could be considered at this stage since Ricardo Juliao could be called as a witness at trial. *See Jones v. UPS Ground Freight*, 683 F.3d 1283, 1293-94 (11th Cir. 2012) ("[A] district court may consider a hearsay statement in passing on a motion for summary judgment if the statement could be reduced to admissible evidence at trial," and "[t]he most obvious way that hearsay testimony can be reduced to admissible form is to have the hearsay declarant testify directly to the matter at trial.") (citation omitted).

Here, as in *International Sales & Service*, a manufacturer poached a client from the distributor. The Court fails to see anything meaningfully different about this case such that a different result is required. If anything, the facts in *International Sales & Service* show worse behavior on the part of the manufacturer in that it lied to the distributor, promising that it would not directly solicit any customers if the distributor would agree to reveal their identities, only to turn right around and do exactly what it promised not to do. Yet, the Eleventh Circuit found that to be privileged competitive behavior as a matter of law. It had previously reached the same conclusion in *Royal Typewriter*, even while noting that the distributor might have a contract or fraud claim based on false promises not to interfere with the distributor's customers. Plus, in this case, the conduct of Liebherr-Mining was objectively reasonable: its refusal to sell parts through Castec was based upon Castec's refusal/inability to pay for parts previously distributed by Castec. In sum, based on the record evidence and consistent with the result in *International Sales & Service*, this Court is forced to conclude as a matter of law that Castec's tortious interference counterclaim is defeated by Liebherr-Mining's competition privilege.

## Conclusion

For the reasons explained herein, the Court finds that Liebherr-Mining is entitled to summary judgment on all its claims and on Castec's tortious interference counterclaim. Accordingly, it is hereby **ORDERED and ADJUDGED** that Liebherr-Mining's Motion for Summary Judgment [ECF No. 32] is **GRANTED**. The Court will enter a separate Final Judgment awarding damages to Liebherr-Mining.[6] In addition, the calendar call scheduled for January 8, 2013 is hereby **CANCELLED** in light of this Order. The Clerk is directed to **CLOSE** this case.

**DONE and ORDERED** in chambers, at Miami, Florida on January 7, 2012.

ROBERT N. SCOLA, JR.
UNITED STATES DISTRICT JUDGE

*Copies to:*
Counsel of Record

---

[6] Although Liebherr-Mining prayed for an award of €273,097.94, "plus interest, costs and attorneys' fees as authorized by contract and law," *see* Mem. at 15, the Court has found the Written Agreement inapplicable to the parties' relationship. Therefore, Liebherr-Mining will only be awarded €273,097.94 on the basis of this summary judgment ruling. Of course, Liebherr-Mining is free to move for fees and costs post-judgment, if there is some independent basis supporting an award.